[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for dissolution of marriage and other relief brought to the Judicial District of Danbury.
Many of the facts that give rise to this action are not in dispute. The plaintiff, whose maiden name is Diane Stryker, and the defendant were married at Fairfield, Connecticut on August 30, 1980. The plaintiff has resided continuously in the State of CT Page 13385 Connecticut for at least twelve (12) months immediately prior to the date of the filing of the complaint. The marriage between the parties has broken down irretrievably without any reasonable prospects of reconciliation. The plaintiff has three minor children issue of the marriage: Melissa Thompson, born January 7, 1982; Audrey Thompson, born July 14, 1984; and Corinne Thompson, born December 1, 1987. No other minor children have been born to the plaintiff wife since the date of marriage of the parties. Neither party has received state assistance. The court finds the following additional facts.
The plaintiff is forty-four (44) years old and the defendant is forty-one (41) years old. Over the course of the marriage of the parties, they have received financial assistance from the plaintiff's aunt and uncle. The parties presently own a family home located at 27 Jeremiah Road, Sandy Hook, Connecticut. The parties have stipulated that the fair market value of that home is $212,000, and that the combined total of the first mortgage and home equity line loan is $121,926. The court enters findings in accordance with that stipulation and, therefore, finds that the equity in the family home is $90,074. The court further finds that the approximate balance of the first mortgage is $88,000, and the approximate balance of the home equity line is approximately $34,000. There are existing liabilities on various credit cards as shown on the defendant's financial affidavit, dated November 7, 1995. Those liabilities are to the Gold MasterCard Bank of New York with a balance of $7,900; Chemical Cash Elite with a balance of $2,824; Shell MasterCard with a balance of $4,900; and Discover Card with a balance of $3,500. In October of 1993, the parties took out a home equity line and used the proceeds to pay off all then existing liabilities. The present liability on the Shell MasterCard and on the Discover Card was incurred by the plaintiff. The present liability on the Chemical Cash Elite and the Gold MasterCard was incurred by the defendant. All of the credit card liabilities were used for normal living and household expenses by the parties.
The plaintiff is a graduate of the University of Michigan with a degree in general studies with a concentration in economics and computer science. She is presently employed, working fifteen (15) hours weekly, for the Town of Newtown doing books and computer work and is also employed, one day a week, at a nursery school doing the books at that school. The parties are in agreement that an order of joint custody should enter. Court finds that the COBRA cost for the plaintiff to continue health CT Page 13386 insurance on the defendant's insurance would be $189 per month. The plaintiff has presently paid $5,000 in attorney's fees with the funds having come from the parties' joint checking account. Over the years, the parties have traditionally gone to Florida during the Christmas vacation to visit with the plaintiff's mother, and have spent Easter and Thanksgiving vacation with the defendant's family.
The defendant is presently employed at Perkin-Elmer Corporation as an operations manager. He is a staff advisor to the top management at his employer's place of business. He has been employed there continuously since 1981 with the total years of employment, resulting from a break in employment, amounting to seventeen (17) years. The plaintiff has a gross weekly income from her position with the Town of Newtown of $172.80, and a net weekly income of $159.58, and has a net weekly income from her nursery school employment of $17.98 for a total net weekly income of $177.56. The defendant has a gross weekly income of $1,653.50, and a net weekly income of $1,052.70. The defendant's employment requires him to take business trips on occasion. During the prior two months, he has been to Holland, Germany, Italy, Switzerland and the United Kingdom. His normal business trips last from Monday to Friday. The defendant has stock options with Perkin-Elmer Corporation with a present net value of $9,350. Those options are not assignable. Each party has bank accounts with an approximate balance of $2,000. The defendant also has stocks and mutual funds consisting of a Scudder fund with a present value of $8,216; a Smith-Barney account with a present value of $7,450; and 152 savings bonds that each cost $100 and have a present value of approximately $17,480. He also has $25,000 worth of insurance with a Security Benefit Life; $255,000 of insurance through Perkin-Elmer, and a so-called $1,000 baby policy through Prudential that was taken out when he was a young child. He has a 401 K deferred compensation plan through Perkin-Elmer with a present value $81,855, and a retirement plan through Perkin-Elmer that has a net present value of $28,000. The defendant owns a 1987 Caravan with a present value of $3,500, and a 1990 Celebrity with a present value of $5,500 and a loan balance of $3,250. The plaintiff has always used the 1987 Dodge Caravan. The amount of support called for under the support guidelines is $420 weekly.
The court has considered the provisions of § 46b-82 in considering the issues of alimony, and has considered the provisions of § 46b-81 in considering the issues of property settlement, and has considered the provisions of § 46b-56 in CT Page 13387 considering the issue of custody and visitation, and has considered the provisions of § 46b-62 in considering the issue of counsel fees.
The court hereby enters the following orders:
I. DISSOLUTION
The marriage between the parties is dissolved on the grounds of irretrievable breakdown, and each party is hereby declared to be single and unmarried.
II. BY WAY OF CUSTODY, VISITATION AND SUPPORT
1. The court enters an order of joint custody of the minor children with primary physical residence with the plaintiff.
2. The defendant is awarded reasonable and flexible visitation. A specific visitation order is entered allowing the children to be with the plaintiff during the Christmas school vacation, and to be with the defendant during the Thanksgiving and Easter school vacations.
3. The defendant is ordered to pay to the plaintiff, by way of support, the sum of $421 per week. A contingent wage execution is authorized.
4. The defendant is ordered to maintain health insurance for the benefit of the minor children. Any unreimbursed or uncovered health expenses for the minor children are to be divided equally between the parties. The provisions of § 46b-84d is applicable.
5. The defendant shall be entitled to claim the children as deductions for federal and state income tax purposes for each calendar year in which he is current in his support payments as of December 31 of that year.
III. BY WAY OF PROPERTY SETTLEMENT
1. All of the defendant's rights, title and interest in the family residence located at 27 Jeremiah Road, Sandy Hook, Connecticut is transferred to the plaintiff under the provision of § 46b-81 of the General Statutes. The plaintiff is to record this judgment file within thirty (30) days. The plaintiff CT Page 13388 is further ordered to execute and deliver a promissory note in the face amount of $35,000 on the family residence by January 2, 1996. Said promissory note is to be due and payable without interest on the earliest of the following contingencies:
 (a) the plaintiff no longer residing at the family residence with all minor children; or
 (b) the commencement of a foreclosure action against the family residence; or
(c) the youngest child reaching age 18; or
(d) the sale of the family residence.
2. The plaintiff is to hold the defendant harmless on the first mortgage and home equity credit line.
3. The defendant is to vacate the family home by January 2, 1996.
4. All of the furniture, fixtures and personal property located at the family home is assigned to the plaintiff except for the stereo and CDs, the defendant's grandmother's rocking chair and silverware, his electric guitar, as well as miscellaneous tools and his clothing, all of which are assigned to the defendant. The defendant is to liquidate by January 2, 1996, so much of the stocks, bonds and mutual funds that are shown on his financial affidavit as is necessary to pay off, in full, the present balance on the Gold MasterCard Bank of New York, the Chemical Cash Elite card, the Shell MasterCard and the Discover card. After paying off the credit card liability, the next $9,350 from the remaining stocks, bonds and mutual funds is assigned to the plaintiff with whatever balance is then left to be divided equally between the parties by January 2, 1996.
5. The deferred compensation plan shown on the defendant's financial affidavit, consisting of his Perkin-Elmer 401 K profit sharing and savings plan, and his NPV Perkin-Elmer retirement plan is ordered divided equally between the parties by a QUADRO. Said transfer is to be completed by January 2, 1996. The court retains jurisdiction over any disputes that may arise regarding the language of the QUADRO. The plaintiff is to prepare the necessary documents. CT Page 13389
6. The PKM stock option shown on the defendant's financial affidavit with a value of $9,350 is assigned to the defendant.
7. All bank accounts shown on the plaintiff's financial affidavit are awarded to the plaintiff, and all bank accounts shown on the defendant's financial affidavit are awarded to the defendant.
8. The defendant is ordered to transfer to the plaintiff title to the 1987 Dodge Caravan. In the event that there are any municipal taxes presently due on that vehicle, the defendant is to pay such taxes. The plaintiff is to transfer to the defendant title to the 1990 Celebrity. In the event there are any municipal taxes presently due on that vehicle, the plaintiff is to pay such taxes. Said transfers are to be completed by January 2, 1996.
IV. BY WAY OF ALIMONY
1. The defendant is to pay to the plaintiff, as alimony, the sum of $225 per week. In addition, he is to provide health insurance through his employer under COBRA for the maximum period allowed by law at the sole option and expense of the plaintiff.
2. Alimony is to terminate when the youngest child reaches eighteen (18) or upon remarriage of the plaintiff or the death of either party, whichever event first occurs. The provisions of § 46b-86(a) and § 46b-86(b) are applicable. Alimony is nonmodifiable as to term. The plaintiff will not have the responsibility of caring for the youngest child when the child reaches age eighteen (18) and she will then be able to reenter the job market full-time and will, therefore, no longer need alimony.
3. The defendant is to name the plaintiff as beneficiary on life insurance in the amount of $250,000. The amount of said life insurance shall be reduced by $25,000 annually commencing one year from today's date.
V. BY WAY OF ATTORNEY'S FEES
1. No attorney's fees are awarded in favor of either party.
VI. MISCELLANEOUS ORDERS
1. The parties are ordered to exchange copies of their CT Page 13390 federal and state income tax returns within thirty (30) days after such returns have been filed, by certified mail, return receipt or registered mail, return receipt, for so long as there is an outstanding support or alimony order.
2. Counsel for the plaintiff is to prepare the judgment file within thirty (30) days and send it to counsel for the defendant for signature and filing.
Axelrod, J.